UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

**Hon. Hugh B. Scott**

ANTONIO BRIGGS,                                      10CR184S
WILL JOHNSON, et al.,

**Order**

Defendants.

Before the Court is defendant Will Johnson's sealed motion to reconsider the Order

disqualifying his counsel due to an actual conflict of interest with a former client (Docket

No. 491; see Docket No. 483, Order of Oct. 15, 2012; see also Docket No. 489, Johnson motion

to file under seal, Docket No. 490, Order granting leave to file under seal).  Familiarity with that

Order is presumed.

That Order decided the motion of the Government for determination of the existence of a

conflict of interest for Johnson and his present counsel (Docket No. 428), see United States v.

Williams, 372 F.3d 96 (2d Cir. 2004) (Court is obligated to conduct inquiry into potential

conflicts).  Defense counsel responded (Docket No. 435), stating that he was not aware of any

conflict with his representation of Johnson and a confidential witness (hereinafter "C.W."), then

cooperating with law enforcement in another case due to pending charges in this Court against

C.W. (id., Def. Atty. Dep. ¶¶ 4-5, 2).

The prosecution against Johnson is for an alleged conspiracy to distribute controlled

substances and money laundering involving over twenty other codefendants.  Johnson is

represented by Thomas Eoannou in this action (see Docket No. 358).  Mr. Eoannou also

represented C.W.  This Court found in the previous Order (Docket No. 483, Order at 4-5) that an actual (and not a mere potential) conflict existed between Johnson and Eoannou due to C.W. coming forward in Johnson's case as a cooperating witness, and threats to C.W. from those believed to be affiliated with Johnson if C.W. proceeded as a cooperating witness.  That actual conflict was deemed to be non-waivable by either Johnson the current client or the former client (id. at 5).  An attorney appearance conference was scheduled for October 29, 2012 (Docket No. 484), and independent stand by counsel was appointed for Johnson (see text minute entry, Oct. 29, 2012).

Johnson, through Eoannou, moved for reconsideration of the declaration of an actual conflict (Docket No. 491).  In his sealed moving papers and during argument on October 29, 2012 (see Docket No. 492; text minute entry Oct. 29, 2012), Eoannou denied most of the bases for the conflict allegations.  First, Eoannou claims that he only represented C.W. briefly, for only one proffer session with the Government in an unrelated case, and that other counsel (Michael D'Amico) represents C.W.  Eoannou then was on trial and C.W. called from his interview with federal agents requesting that Eoannou be present and that C.W. did not want to talk with the agents without Eoannou being there.  Eoannou states there was no mention of Johnson or Briggs, and no indication to him that a conflict might exist with his representation of C.W. and Johnson. C.W. never indicated that he would cooperate in the Briggs investigation.  Eoannou vehemently denies instructing C.W. not to talk with agents.  As for the allegations of threats made by Johnson's family to C.W., Eoannou states that he told Johnson's mother on two occasions to leave the Court before C.W. was to appear and advised her not to attend the conference held on October 29, 2012.  Eoannou will submit a formal termination of his representation of C.W. in the

other case.  To date, Eoannou has not formally withdrawn from representing C.W. in the other case.[1]

During oral argument, Eoannou repeatedly mentioned the name of C.W.  This Court declines to repeat that name in this Order due to the allegations made regarding C.W.'s safety.

The Government responded during the October 29, 2012, conference that the agents were sure that a conflict existed, that Eoannou advised C.W. not to talk with them about Johnson.  The Government then notes that C.W. appears to be recanting and withdrawing his cooperation.  The Government sought that any hearing on this matter be sealed and noted that the overall case needs to be resolved quickly (cf. Docket Nos. 478, 493).

This Court reserved decision on the motion for reconsideration (text minute entry, Oct. 29, 2012), and contemplated whether to hold a further hearing.  Upon further consideration this Court now **declines to conduct a further hearing**.

DISCUSSION

I.     Reconsideration Standards

The Federal Rules of Criminal Procedure makes no express provision for reconsideration. Judge Larimer in another case held that the Magistrate Judge there had the "discretion to reconsider or reopen prior proceedings which precipitated" the Magistrate Judge's decision, United States v. Florack, 155 F.R.D. 49, 51 (W.D.N.Y. 1994).  In Florack, the Government sought reconsideration (pursuant to then Federal Rule of Criminal Procedure 12(f)[2]) by

---

[1]From the name stated by Eoannou and review of the docket of the other case reveals that counsel of record is Michael D'Amico, who shares office space and telephone number with Eoannou.

[2]Now, in part, Federal Rule of Criminal Procedure 12(e).

Magistrate Judge Fisher of his refusal to allow the Government to argue an otherwise defaulted suppression motion, id. at 50-51; see id. at 51-52 (Report & Rec. of Fisher, Mag. J.).  Judge Siragusa of this Court held in United States v. Amanuel, No. 05CR6075, 2006 WL 266560, at *1 (W.D.N.Y. Jan. 31, 2006), that the civil standard for reconsideration is applicable in criminal cases, that the standard for reconsideration is "strict" and reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," id. (internal quotations and citations omitted).

II.     What Type of Conflict Is Presented Here?

A defendant has a Sixth Amendment right to be represented by conflict-free counsel, Holloway v. Arkansas, 435 U.S. 475, 484 (1978); Glasser v. United States, 315 U.S. 60, 71 (1942); United States v. Falzone, 766 F. Supp. 1265, 1271 (W.D.N.Y. 1991) (Arcara, J.).  A conflict arises when defendant's counsel of choice represents (or formerly represents) a Government witness appearing against defendant, Falzone, supra, 766 F. Supp. at 1271.  As previously stated, under applicable New York Rules of Professional Conduct, a lawyer shall not represent a client if a reasonable lawyer would conclude that "the representation will involve the lawyer in representing differing interests," § 1200.0 Rules of Professional Conduct, Rule 1.7(a)(1) (2009).  Where a conflict of interest between an attorney and his client is potential, this Court may in its discretion disqualify that counsel based upon the Court's "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them," Wheat v. United States, 486 U.S. 153, 160 (1988); see also United States v. Sullivan, 381 F. Supp. 2d 120

4

(W.D.N.Y. 2005) (Larimer, J.).  A conflict relating to an attorney's prior representation of a witness is generally waivable, Perez, supra, 325 F.3d at 127.  For a waivable conflict, the Curcio inquiry and advisement of defendant's rights in this situation is necessary, United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982); United States v. Perez, 325 F.3d 115, 119 (2d Cir. 2003).

In Sullivan, Judge Larimer found an actual conflict existed where defense counsel represented two defendants, when one defendant intended to cooperate with the Government and testify against the second and the second defendant had "taken steps to threaten a potential witness against" the first defendant, Sullivan, supra, 318 F. Supp. 2d at 121, 122.

A common conflict situation occurs when one client is called as a witness for the prosecution against an attorney's other client.  One commentator notes that the attorney faces a Hobson's choice, either cross-examine vigorously the former client (based in part upon knowledge obtained in confidence from that client) or protect the witness-client's confidences to the detriment of the defendant client, Richard E. Flamm, Lawyer Disqualification § 31.8, at 613-14 (2003).  Absent a knowing and intelligent waiver, the attorney owes the witness-client a continuing duty to maintain confidences, even if the representation ends id.  Given this scenario, courts often disqualify counsel, see id. at 614 & n.21 & 975 (Supp. 2012); United States v. Daugerdas, 735 F. Supp. 2d 113, 116, 118 (simultaneous representation of defendant and witness "undermines the integrity of these proceedings") (S.D.N.Y. 2010); United States v. Dunlap, No. 2:08-cr-00283-RCJ-RJJ, 2010 U.S. Dist. LEXIS 82474, at *22-24 (D. Nev. July 6, 2010).  In Daugerdas, the court noted that its obligation extended beyond the case and defendant before it

but also to the proceeding involving the client-witness before another judge, 735 F. Supp. 2d at 117.

"However, even if a defendant knowingly and intelligently waives his Sixth Amendment right to conflict-free counsel, this does not resolve the conflict posed by the duty of confidentiality that his attorney may still owe to the government witness appearing against him. The right of a criminal defendant to be represented by counsel of his choice is not absolute," Falzone, supra, 766 F. Supp. at 1272 (citing Wheat, supra, 486 U.S. at 159-60). The right to counsel of a defendant's choice has to be balanced with the defendant's right to a fair trial, id.; United States ex rel. Stewart on behalf of Tineo v. Kelly, 870 F.2d 854, 856 (2d Cir. 1989). This Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that the legal proceedings appear fair to all who observe them," Wheat, supra, 486 U.S. at 160; Falzone, supra, 766 F. Supp. at 1272. "Thus, the presumption in favor of a defendant's counsel of choice may be overcome by either 'a demonstration of actual conflict' or 'by a showing of a serious potential for conflict,' despite defendant's waiver of conflict-free counsel," Falzone, supra, 766 F. Supp. at 1272 (quoting Wheat, supra, 486 U.S. at 164).

Here, Johnson was repeatedly advised of his right to representation free of the potential conflict. Johnson was advised of the dangers of this dual representation by Eoannou. Johnson conferred both with Eoannou as well as appointed standby counsel. With the delays in setting, and then aborting, the Curcio proceeding for C.W., Johnson has received adequate time to consider his options. Johnson continues to assert that he wants to continue to have Eoannou as his attorney. If this were a potential conflict, the next step would be determining whether to

honor Johnson's choice for counsel despite the conflict he faces. As in some other cases, e.g., Falzone, supra, 766 F. Supp. at 1266, C.W. indicated in the sealed reconsideration papers that he waives any conflict.

The issue is whether actual conflict exists between Eoannou's present client, Will Johnson, and his former (and for record purposes present) other client, C.W. Eoannou denies that C.W. intends to testify against Johnson, but Eoannou also stated that he warned the Court about conducting a proceeding with C.W. and Johnson's family being present, asking Johnson's mother not to attend two proceedings where C.W. would be present. Eoannou claims that C.W. is no longer his client, but Eoannou remains technically counsel of record and the co-counsel of record is an attorney who shares office space and telephone number with Eoannou. Eoannou repeatedly used C.W.'s name during the October 29 conference while the Government argued that C.W. was now recanting due to this motion practice.

Both clients have expressly (verbally or in written submission) waived the conflict. In Falzone, supra, 766 F. Supp. at 1279-80, this waiver was sufficient for this Court to not disqualify Harold Boreanaz from representing a defendant where the former client did not join in the Government's disqualification motion. But here, there is serious question whether C.W. knowingly and intelligently waived this conflict.

The way to avoid this conflict or to render it no longer an actual conflict is not to have C.W. avoid it by declining to cooperate. This cooperation may have an impact on the resolution of C.W.'s pending criminal prosecution. While the focus of the original Order was upon the impact of this conflict on Johnson (the defendant pending before this Court), the conflict has an impact on C.W. and the direction of C.W.'s prosecution. Eoannou still owes an ethical

obligation to C.W. even if C.W. is now a former client and despite C.W.'s stated waiver of any conflict. This Court has an independent interest in ensuring that the trials of both Johnson and C.W. are fair despite their interrelationship through Eoannou.

Due to the allegations of threats made to C.W. and now the Government's assertion that C.W. has probably recanted, if C.W. comes forward or remains identified as a Government informant in this case or even with C.W. recanting his cooperation (and its impact on the disposition of C.W.'s case), Eoannou's continued representation of Johnson in light of its impact on his (former) client C.W. goes from a potential to **an actual conflict**. The adverse interests here are more on C.W. and how that person's case may be determined given C.W.'s recanting of cooperation (be it generally or as against Johnson) due to this motion practice. On Johnson's motion to reconsider, it is **denied**.

As an actual conflict, it is **not waivable** by either client as the interests of Johnson and C.W. diverge with "respect to a material factual or legal issue or to a course of action," Cuyler v. Sullivan, 446 U.S. 335, 356 n.3 (1980); United States v. Fulton, 5 F.3d 605, 609 (2d Cir. 1993). This Court continues to **reject Johnson's attempted waiver of a conflict** since continuing this representation "jeopardizes the integrity of judicial proceedings," Perez, supra, 325 F.3d at 125; see Daugerdas, supra, 735 F. Supp. 2d at 116, 118, in this case.

This Court appoints **Kevin W. Spitler, Esq.**, as new counsel for defendant Will Johnson in this prosecution.

CONCLUSION

For the reasons stated above, defendant Will Johnson's motion (Docket No. 491) to reconsider the Order declaring an actual, non-waivable conflict exists between him and his

attorney, Thomas Eoannou, is **denied**.  This Court reaffirms its finding that **an actual, non-waivable conflict exists between defendant Will Johnson in this action and his present counsel, Thomas Eoannou**.

So Ordered.

/s/ Hugh B. Scott
_____
Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
        November 7, 2012